IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID SCOTT JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>PLEASANT VIEW CITY CORPORATION, PLEASANT VIEW CITY COUNCIL, TOBY MILESKI, SCOTT BOEHME, JEROLD BURNS, STEVE GIBSON, MIKE HUMPHREYS, MEL MARKER, MELINDA GREENWOOD AND JOHN DOES I-V,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 1:14-CV-111 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court will grant the Motion.

## I.  BACKGROUND

   Plaintiff David Scott Jackson was, at all relevant times, the Chief of Police for the Pleasant View City Police Department. In June 2014, Chief Jackson was contacted by the wife of a city police sergeant. The sergeant's wife was concerned that her husband was having an affair, possibly while on duty. These accusations eventually made their way to Mayor Toby Mileski and City Administrator Melinda Greenwood. Ms. Greenwood began her own investigation in the matter. The competing investigations led to tensions between Chief Jackson and Ms. Greenwood.

   On July 9, 2014, Ms. Greenwood sent an email to Mayor Mileski and Chief Jackson, stating that there was a "[g]eneral feeling of lack of trust and respect" with the sergeant and that

"[m]orale with the department is an issue."[1] On July 10, 2014, Chief Jackson requested a meeting with Mayor Mileski and Ms. Greenwood. That meeting took place the following day, July 11, 2014.

The meeting became heated and Ms. Greenwood made several statements that give rise, in part, to Plaintiff's claims. Ms. Greenwood stated that Chief Jackson had done a terrible job of investigating the allegations against the sergeant, that the officers in the police department had lost all trust and respect for the Chief, and that morale within the department was low. Plaintiff also testified that Mayor Mileski stated that the department had become a laughing stock.[2] At some point during the meeting, Chief Jackson asked to be terminated.[3] At the end of the meeting, Chief Jackson was placed on administrative leave for insubordination, pending a City Council meeting.

A City Council meeting took place the following day. The City Council voted to go into closed session. During that closed session, the City Council, along with Mayor Mileski and Ms. Greenwood, discussed whether to terminate Chief Jackson without cause. Many of the statements made during the previous day's meeting were reiterated during the closed session of the City Council meeting. Chief Jackson was permitted to briefly address the City Council during the closed session. At the conclusion of the closed session, the City Council came to an

---

[1] Docket No. 40 Ex. 13.

[2] There is some dispute about who made this statement, but that dispute is irrelevant to this Motion.

[3] Plaintiff contends that he was not really asking to be terminated, but was merely asking why he had not been terminated if Mayor Mileski and Ms. Greenwood believed he was doing such a poor job. This dispute is irrelevant to this Motion as it is undisputed that Chief Jackson was later terminated.

open meeting and voted 2-2 to terminate Chief Jackson.  Mayor Mileski then voted in favor of termination without cause, breaking the tie and resulting in Chief Jackson's termination.

On July 14, 2014, the Standard Examiner, a local newspaper, issued a records request to the City under the Utah Government Records Access and Management Act ("GRAMA").  Ms. Greenwood responded to the GRAMA request on July 16, 2014, by providing a number of documents.  These documents, along with a press release, were also placed on the City's website.  These documents contained many of the statements of which Plaintiff complains.

After his termination, Chief Jackson was able to obtain employment in construction at the Sorrel River Ranch from January 2015 through April 2015.  He then was employed as a Deputy/Drug Tracker at the Grand County Sheriff's Office from March 2015 through May 2016.  He has been employed as a Juvenile Probation officer at the Sixth District Court from May 2016 through the present.  The positions at the Grand County Sherriff's Office and the Sixth District Court were the only two law enforcement positions for which Chief Jackson applied, though he made inquiries to other law enforcement agencies.  In applying for these positions, Chief Jackson had no discussions with either employer about the circumstances surrounding his termination.  Additionally, Chief Jackson has not applied for any law enforcement position that he believes he did not obtain because of his termination.

Plaintiff originally brought claims under the Due Process Clause asserting the deprivation of both a property interest and a liberty interest.[4]  The Court previously dismissed Plaintiff's property interest claims with prejudice.[5]  Only Plaintiff's liberty interest claim remains.

---

[4] Plaintiffs' Amended Complaint asserts five causes of action.  Defendants have stated that Plaintiff's claims are only cognizable as claims under the Due Process Clause, something which Plaintiff has not disputed.  To the extent that Plaintiff is asserting state law claims in

3

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[7] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[8]

## III. DISCUSSION

"A public employee has a liberty interest in his good name and reputation as they relate to his continued employment."[9]

> The government infringes upon that interest when: (1) it makes a statement that "impugn[s] the good name, reputation, honor, or integrity of the employee"; (2) the statement is false; (3) the statement is made during the course of termination *and* "foreclose[s] other employment opportunities"; and (4) the statement is published, in other words disclosed publically.[10]

---

addition to this Due Process claims, the Court declines to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

[5] *See* Docket No. 31.

[6] Fed. R. Civ. P. 56(a).

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[8] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[9] *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014).

[10] *Id.* (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (alterations in original).

"These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest."[11]

A. STATEMENTS THAT IMPUGN GOOD NAME, REPUTATION, HONOR, OR INEGRITY

"[T]o be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee."[12] The Tenth Circuit has held that "charges involving negligence and neglect of duties" "are insufficient to establish a liberty interest deprivation."[13] Similarly, charges of "poor work habits or failure to follow instructions" are not enough,[14] nor are complaints of insubordination.[15] "In order to state a constitutional claim, the charges must implicate dishonesty or immorality in order to deprive an employee of a liberty interest in his good name and reputation."[16]

Defendants argue that the bulk of the statements complained of by Chief Jackson are not actionable under this standard. The Court agrees. The vast majority of the statements relate to Chief Jackson's alleged neglect of duties, poor work habits, failure to follow instructions, and insubordination. However, Ms. Greenwood also stated that the officers in the police department

---

[11] *Workman*, 32 F.3d at 481.

[12] *Id.*

[13] *Se. Kan. Cmty. Action Program Inc. v. Sec'y of Agric.*, 967 F.2d 1452, 1458 (10th Cir. 1992); *see also Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) (holding that complaints of negligence and dereliction of duties do not implicate "concerns of a constitutional stature").

[14] *Hicks v. City of Watonga*, 942 F.2d 737, 746 (10th Cir. 1991).

[15] *Walker v. Elbert*, 75 F.3d 592, 597 (10th Cir. 1996) ("Charges of insubordination or poor work habits are not considered to be stigmatizing."); *see also Conway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (stating that claims of neglect of duties and insubordination "do not call into question [plaintiff's] good name, reputation, honor, or integrity").

[16] *Hicks*, 942 F.2d at 746 (quotation marks omitted).

had lost all trust and respect for the Chief, and that morale within the department was low. These statements are sufficient to survive summary judgment under Tenth Circuit precedent.

In *Miller v. City of Mission*,[17] a chief of police brought suit after his termination. In a press release issued by the city's mayor, the mayor stated that the decision to terminate the police chief "was based on findings that police department 'morale was very low, the officers do not respect the Chief and Assistant Chief. The department has deteriorated to an extend [sic] that the men felt that they could not work effectively with the Chief and Assistant Chief.'"[18] The circuit court found such statements sufficient to support a claim for liberty interest deprivation. Similar statements were made here. Ms. Greenwood stated that the officers in the department had lost trust and respect for Chief Jackson and the morale within the department was an issue.

Defendants seek to distinguish *Miller*, arguing that these statements actually relate to the sergeant who was allegedly having an affair, not Chief Jackson. While this is certainly a plausible reading of these statements, it is not the only one. These statements could relate to the sergeant's alleged affair, but they could just as easily be read to relate to the Chief's handling of the allegations. At summary judgment, the Court must construe all facts and inferences in favor of Chief Jackson as the nonmoving party. As a result, there are sufficient facts on this element to survive summary judgment.

---

[17] 705 F.2d 368 (10th Cir. 1983).

[18] *Id.* at 373.

B.     FALSITY

Defendants make no argument that the actionable statements made were true. Therefore, for the purposes of this Motion, the Court will assume that the complained of statements were false.

C.     DURING THE COURSE OF TERMINATION AND FORECLOSING EMPLOYMENT

To prevail on his claim, Plaintiff must prove that the alleged statements were made during the course of termination and foreclosed other employment opportunities. While at times the Tenth Circuit has stated this element in the disjunctive,[19] the court has recently made clear that it is properly phrased in the conjunctive.[20] Thus, Plaintiff must prove not only that defamatory statements were made, but also that they foreclosed other employment opportunities.[21]

Plaintiff "does not have to prove *actual* denial of a job opportunity. It is sufficient that a plaintiff prove termination based upon a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment by a future employer."[22] However, "circumstances which make an employee 'somewhat less attractive' to employers

---

[19] *See Workman*, 32 F.3d at 481.

[20] *McDonald*, 769 F.3d at 1212 n.3 (citing *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000), *Melton v. City of Okla. City*, 928 F.2d 920, 926–27 (10th Cir. 1991) (en banc)).

[21] *Coleman v. Utah State Charter Sch. Bd.*, ---F. App'x---, 2016 WL 7321198, at *5 (10th Cir. Dec. 16, 2016) ("In this circuit, claims based on liberty interests require proof not only of defamatory statements injuring an employee's reputation, but also proof of harm that forecloses other employment opportunities.").

[22] *Melton*, 928 F.2d at 927 n.11.

would hardly establish the kind of 'foreclosure of opportunities amounting to a deprivation of liberty.'"[23]

The evidence shows that Chief Jackson was able to find employment after his termination, including employment in his chosen field of law enforcement. Indeed, Chief Jackson was hired for both law enforcement positions for which he applied. His termination from the City was not discussed in obtaining either of these jobs. Importantly, Chief Jackson testified that he has not applied for any law enforcement position that he believes he did not obtain because of the circumstances surrounding his termination.[24]

In his Declaration, Chief Jackson states that he has been pursuing employment at a higher administrative level, but has been unable to obtain employment that is anywhere near the same compensation or same level of responsibility.[25] However, he provides no evidence that his failure to obtain such positions relate to the circumstances surrounding his termination. The vast majority of law enforcement agencies he contacted while receiving unemployment benefits were not hiring at the time.[26] There is no connection between his failure to obtain a more advanced position and Defendants' statements. Plaintiff's speculative beliefs that Defendants' statements caused a loss of employment opportunities are "insufficient to create an issue of fact."[27] Further, "[a] liberty interest is not implicated where the charges merely result in reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of

---

[23] *Asbill v. Housing Authority of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 574 n.13 (1972)).

[24] Docket No. 45 Ex. 1, at 245:2–6.

[25] Docket No. 46 ¶ 8.

[26] *Id.* Ex. A.

[27] *Walker*, 75 F.3d at 597.

employment."[28] Thus, the fact that he has not obtained employment with the same compensation or level of responsibility is not sufficient to support a due process claim. The fact remains that Chief Jackson has obtained employment in his chosen field.

Based upon this, the Court concludes that summary judgment is proper. As a result, the Court need not discuss Defendants' remaining arguments.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 40) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff and close this case forthwith.

DATED this 23rd day of January, 2017.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[28] *Setliff v. Mem'l Hop. of Sheridan Cnty.*, 850 F.2d 1384, 1397 (10th Cir. 1988) (quoting *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985)).